UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MALCOLM BAPTISTE,

                         Petitioner,

    v.                                                    Civil Action No.
                                                          9:08-CV-00728 (TJM)

ROBERT ERCOLE,
    Supt., Green Haven Correctional Facility,

                         Respondent.

---

APPEARANCES:                          OF COUNSEL:

FOR PETITIONER:

OFFICE OF JONATHAN I. EDELSTEIN    JONATHAN I. EDELSTEIN, ESQ.
271 Madison Avenue
20th Floor
New York, New York 10016

FOR RESPONDENT:

HON. ERIC T. SCHNEIDERMAN          LEILANI J. RODRIGUEZ, ESQ.
Office of the Attorney General     Ass't Attorney General
120 Broadway
New York, New York 10271

**HON. THOMAS J. MCAVOY, SENIOR U.S. DISTRICT JUDGE**

**<u>DECISION AND ORDER</u>**

        Petitioner Malcolm Baptiste is an inmate in the custody of the New York Department

of Correctional Services ("DOCS"). He was convicted by a jury in Schenectady County Court

of two counts of second degree murder (N.Y. PENAL LAW § 125.25(2)) and second degree

criminal possession of a weapon (N.Y. PENAL LAW § 265.03) and was sentenced to serve an

aggregate term of fifty years to life in prison. Dkt. No. 1 at 2.

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that: (1) the evidence was insufficient to prove depraved indifference murder; (2) his post-arrest statements should have been suppressed because police lacked probable cause to arrest him; (3) he was improperly precluded from calling a rebuttal witness; (4) trial counsel was ineffective; and (5) appellate counsel was ineffective.  Dkt. No. 1 at 5-14, including attached pages; Dkt. No. 5, Memorandum of Law ("Mem.") at 10-32. Respondent has filed an answer, memorandum of law and the relevant state court records. Dkt. Nos. 13-20.  Petitioner filed a reply memorandum. Dkt. No. 23.  For the reasons that follow, the petition is denied and dismissed.

## I.      Relevant Background

The Supreme Court of New York, Appellate Division, Third Department, briefly summarized the facts of this case:

> On August 11, 1995, defendant and his former girlfriend, Jeanette Cortijo, engaged in a verbal altercation, after which defendant uttered that he was tired of her and "I am going to kill her." In the early morning hours of August 12, 1995, the two had another altercation where defendant pushed Cortijo into her car. She then drove her car at defendant, causing him to fall off of the bicycle he was riding. He again stated that he was tired of her and was going to kill her. Defendant then retrieved his 9 millimeter gun from the apartment at 945 Emmett Street in the City of Schenectady, Schenectady County, where he lived with codefendant Jamal Dennis[1] and three women. He and Dennis located Cortijo, leading to another verbal altercation. While the two men attempted to walk away, Cortijo followed them in her car, drove away, then quickly returned. At that point, at approximately 3:30 A.M., defendant shot into Cortijo's car multiple times, killing her and her passenger, Chakima Dickerson.

---

[1]      Dennis was acquitted of the homicide charges pending against him, but was convicted of third degree criminal possession of a weapon. On July 8, 1999, the Appellate Division, Third Department, affirmed his conviction, and the New York Court of Appeals denied leave to appeal on November 29, 1999.  *People v. Dennis*, 263 A.D.2d 618 (3d Dep't. 1999), *lv. denied* 94 N.Y.2d 822 (1999).

Defendant and Dennis then fled and returned to their nearby apartment, where defendant admitted to one of the women that he killed Cortijo. At approximately 4:00 A.M., defendant called a girlfriend in Brooklyn to pick him up.

An individual informed the police that he saw three men running in the direction of an alley next to 945 Emmett Street at about the time of the shootings. Police saw defendant, Dennis and others hurriedly loading a cab from Brooklyn at that location at approximately 9:00 A.M. Police questioned these individuals regarding their actions and the cab was searched, revealing nothing. The vehicle then left for Brooklyn. Later that morning, a downstairs resident of 945 Emmett Street called the police. She had found a shirt wrapped around a gun clip in the backyard bushes, which had not been there around 1:00 A.M. The clip contained 9 millimeter bullets of the same brand as the casings recovered from the crime scene. As a result of this discovery, the Schenectady police sent a bulletin to the State Police requesting that they stop the cab and detain its occupants. Several State Police cars stopped the vehicle on the Thruway. Troopers approached with guns drawn, requesting that everyone exit the vehicle. Each occupant was patted down, handcuffed and then transported to the State Police barracks in separate police cars. At the barracks, defendant was shackled to the wall in an investigation room and read his *Miranda* rights; he sat for about two hours and then was questioned. At first, defendant denied knowing anything about the incident. Questioning continued, intermittently, for several hours, during which time defendant was provided food, beverages and cigarettes. Meanwhile, in Schenectady, police located a 9 millimeter Glock pistol and empty clip in a vacant lot two blocks from the murder scene and one block from 945 Emmett Street.

At about 5:30 P.M., an investigator spoke with defendant, after again reading him his *Miranda* rights. Questioning elicited that defendant knew Cortijo, she was a former girlfriend and they had argued the previous night. A few hours later, defendant made an incriminating, but also exculpatory, oral statement to the investigator. The investigator then went through defendant's story again, reducing it to writing, which defendant reviewed and signed at about 11:30 P.M.

Defendant was charged by indictment with 11 counts, including two counts of murder in the second degree in violation of Penal Law § 125.25 (1), two counts of murder in the second degree in violation of Penal Law § 125.25 (2), and one count of criminal possession of a weapon in the second degree in violation of Penal Law § 265.03. Following an extensive *Huntley* hearing, County Court found the stop and subsequent arrest legal, rendering defendant's statements admissible. After a jury trial, during which several counts of the indictment

> were dismissed, defendant was convicted of two counts of second degree murder in violation of Penal Law § 125.25 (2) (depraved mind murder) and one count of criminal possession of a weapon in the second degree. Defense counsel unsuccessfully moved for a new trial, pursuant to CPL 330.30. County Court sentenced defendant to two consecutive prison terms of 25 years to life for the murder counts, and a concurrent prison term of 5 to 15 years for the weapon count.

*People v. Baptiste*, 306 A.D.2d 562, 563-64 (3d Dep't. 2003).

Petitioner timely appealed his conviction, arguing that: (1) the trial court erred by failing to dismiss the depraved indifference murder charges because if he was guilty at all, the shootings were intentional and not reckless; (2) his statements should have been suppressed as fruit of the poisonous tree because police lacked probable cause to arrest him; (3) the trial court deprived him of his right to confront witnesses against him by not permitting him to call witnesses to impeach a prosecution witness; (4) trial counsel was ineffective; and (5) the sentence was harsh and excessive.  Dkt. No. 16, Ex. F at 63-86.  The People opposed the appeal, and Petitioner filed a reply brief.  *Id.* at Exs. G-H.

On April 24, 2001, while Petitioner's direct appeal was pending, he filed a motion to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10 on the ground that trial counsel was ineffective for failing to: (1) raise the defenses of mental disease or defect or temporary insanity; (2) discuss trial strategy or any potential defenses with Petitioner; (3) call an expert witness; (4) request a missing witness charge; and (5) assisting the prosecution in obtaining a key witness.  Dkt. No. 16, Ex. A. The Schenectady County Court denied the motion on August 6, 2001, finding that Petitioner received "effective assistance of counsel." *Id.*, Ex. C, at 2. On October 10, 2001, the Appellate Division, Third Department, granted Petitioner leave to appeal that decision and consolidated it with

4

Petitioner's direct appeal. *Id.* at Ex. E.

On June 5, 2003, the Appellate Division affirmed both Petitioner's conviction and the denial of his section 440 motion. *Baptiste*, 306 A.D.3d at 562-70. *See* Dkt. No. 16, Ex. J. Leave to appeal to the New York Court of Appeals was denied on January 26, 2004. *Baptiste*, 1 N.Y.3d 594 (2004); Dkt. No. 16, Ex. L.

On December 1, 2004, Petitioner filed a second section 440 motion on the ground that counsel was ineffective for failing to argue that: (1) the depraved indifference murder statute was unconstitutional as applied to Petitioner; and (2) the evidence was solely consistent with intentional murder. Dkt. No. 16, Ex. M at 5-20. The People opposed the motion, and Petitioner filed a reply. *Id.* at Exs. N-O. On May 12, 2005, the Schenectady County Court denied the motion pursuant to CPL § 440.10(3)(c) because Petitioner previously filed a section 440 motion alleging ineffective assistance of counsel but did not raise these grounds, and pursuant to CPL § 440.10(2)(a) because Petitioner's challenge to the "submission and conviction of Depraved Indifference Murder was raised and affirmed on appeal." Dkt. No. 16, Ex. P, at 2. The court also noted that Petitioner raised an ineffective assistance of counsel claim on direct appeal that was rejected. *Id.* The Appellate Division denied leave to appeal on July 28, 2005. Dkt. No. 16, Ex. R.

On August 31, 2005, Petitioner filed a writ of error coram nobis in which he argued that appellate counsel was ineffective for failing to argue trial counsel was ineffective for not arguing that the depraved indifference murder statute was unconstitutionally vague as applied to Petitioner. Dkt. No. 16, Ex. S, at 5-18. Petitioner also asked the Appellate Division to vacate its June 5, 2003 decision affirming his conviction and to permit additional briefing on

whether the New York Court of Appeals's decision in *People v. Payne*, 3 N.Y.3d 266 (2004) was retroactively applicable to Petitioner's case. *Id.* at 18-27. The People opposed the writ, and Petitioner filed a reply brief. Dkt. No. 16, Exs. T-U. On October 14, 2005, the Appellate Division denied the writ. *Id.* at Ex. V. On June 5, 2007, the New York Court of Appeals denied leave to appeal. *Id.* at Ex. Y.

On August 9, 2006, Petitioner filed a third section 440 motion in which he argued that the New York Court of Appeals's decisions in *People v. Suarez*, 6 N.Y.3d 202 (2005) and *People v. Feingold*, 7 N.Y.3d 288 (2006), changed New York jurisprudence on depraved indifference murder, that these decisions should apply retroactively, and that his conviction should be reversed. Dkt. No. 16, Ex. Z at 5-16. The People opposed the motion. Dkt. No. 17, Ex. AA. On January 16, 2007, the Schenectady County Court denied the motion pursuant to CPL § 440.10(2)(a) because the Appellate Division found on direct appeal that the evidence was sufficient to sustain Petitioner's conviction for depraved indifference murder, and that "[a]lthough there has been a gradual and perceptive change in the law governing depraved indifference murder this change does not apply retroactively." Dkt. No. 17, Ex. BB. On February 12, 2007, Petitioner filed a motion to reargue, and he sought leave to appeal the denial of his motion. *See* Dkt. No. 17, Exs. CC, FF.[2]

On April 17, 2007, the Appellate Division granted leave to appeal, and on January 9, 2008, it affirmed the denial of Petitioner's motion. Dkt. No. 17, Exs. HH, LL; *People v. Baptiste*, 51 A.D.3d 184 (3d Dep't 2008). The Appellate Division held that the law regarding

---

[2]     The motion to re-argue was ultimately denied. No copy of the trial court's decision denying Petitioner's motion to re-argue has been provided to the Court.

depraved indifference murder changed beyond the "point of no return" on October 19, 2004,

when the New York Court of Appeals decided *Payne*. *Baptiste*, 51 A.D.3d at 185.  Since

Petitioner's conviction was final before *Payne* was decided, the Appellate Division ruled that

his section 440 motion was properly denied.  *Id.* at 192-195. The New York Court of Appeals

denied leave to appeal on June 13, 2008.  Dkt. No. 17, Ex. PP; *Baptiste*, 10 N.Y.3d 932

(2008).

This action followed.

## II.   DISCUSSION

### A.   Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a

federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits

in state court only if the adjudication of the claim: (1) was contrary to, or involved an

unreasonable application of, clearly established federal law, as determined by the Supreme

Court of the United States; or (2) was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding. *Schriro v. Landrigan,* 550 U.S.

465, 473 (2007)(citing 28 U.S.C. §§2254(d)(1), (2)); *Acosta v. Artuz*, 575 F.3d 177, 184 (2d

Cir. 2009).

A state court decision violates the "contrary to" clause of section 2254(d)(1) when it

"reaches a result opposite to the one reached by the Supreme Court on the same question of

law or arrives at a result opposite to the one reached by the Supreme Court on a 'materially

indistinguishable' set of facts." *Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006) (quoting

*Williams v. Taylor,* 529 U.S. 362, 405-06 (2000)). A federal habeas court may only grant the

7

writ under the "unreasonable application" clause of the section when the state court's decision "identifies the correct rule of law but applies that principle to the facts of the petitioner's case in an unreasonable way." *Id.* at 74 (citing *Williams*, 529 U.S. at 413). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro,* 550 U.S. at 473. Federal habeas courts are also required under AEDPA "to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' " *Id.* at 473-74 (quoting § 2254(e)(1)).

### B. Ground One - Sufficiency of the Evidence

Petitioner alleges in Ground One of his petition that the Appellate Division's determination that New York law on depraved indifference murder changed when the Court of Appeals decided *People v. Payne,* 3 N.Y.3d 266 (2004) was an unreasonable application of *Fiore v. White*, 531 U.S. 225 (2001)(*per curiam*) and *Bunkley v. Florida*, 538 U.S. 835 (2003)(*per curiam*). *See* Dkt. No. 5, Mem. at 9-17; Dkt. No. 23, Traverse, at 1-4. Petitioner also argues that under the law at the time his conviction became final, "his conduct in deliberately firing a large number of shots at close range is solely consistent with intent and cannot make out the mental states of recklessness or depraved indifference." Dkt. No. 1 at 6; Mem. at 14-18; Dkt. No. 23 at 5-10.

Petitioner's claims are based upon his interpretation of the effect of the changes in New York's jurisprudence on depraved indifference murder. Currently, under New York law, a person is guilty of depraved indifference murder if, "under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave

risk of death to another person, and thereby causes the death of another person." N.Y. PENAL LAW § 125.25(2). A reckless mental state exists when a person "is aware of and consciously disregards a substantial and unjustifiable risk" that death or serious injury will occur. *People v. Bowman*, 48 A.D.3d 178, 181 (3d Dep't 2007)(quoting PENAL LAW § 15.05[3] ), *lv. denied* 10 N.Y.3d 808 (2008). "The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." N.Y. PENAL LAW § 15.05(3). Because of a series of changes in New York law, however, what constitutes depraved indifference murder depends upon when a particular conviction has become final.

At the time of Petitioner's trial in 1996, the law regarding depraved indifference murder was reflected in *People v. Register*, 60 N.Y.2d 270 (1983), *cert. denied* 466 U.S. 953 (1984). Depraved indifference crimes contained both a mental element (recklessness) and a voluntary act (engaging in conduct which creates a grave risk of death to another person). *Register*, 60 N.Y.2d at 276. The requirement that a defendant's conduct occur " '[u]nder circumstances evincing a depraved indifference to human life" ' referred to "neither the *mens rea* nor the *actus reus* " but rather to "the factual setting in which the risk creating conduct must occur[.]" *Id.* (emphasis in original). The relevant focus at that time was on "the objective circumstances" in which the act occurred, and those circumstances defined "the degree of risk created by the defendant." *Policano v. Herbert*, 7 N.Y.3d 588, 597 (2006). Recklessness was the only culpable mental state for depraved indifference murder. *See Rustici v. Phillips*, 497 F. Supp. 2d 452, 484 (E.D.N.Y. 2007)(citing, *inter alia, Register*, 60 N.Y.2d at 274), *aff'd* 308 Fed. Appx. 4678 (2d Cir. Jan. 23, 2009).

After Petitioner was convicted, but before his conviction became final, the Court of Appeals decided *People v. Sanchez*, 98 N.Y.2d 373 (2002). In *Sanchez*, the defendant and the victim, who were acquaintances, exchanged "harsh words ... in a hallway near the foyer entrance of the apartment[.]" *Id.* at 375. Sanchez walked through the entrance doorway from the hallway where two children were playing in the foyer, away from the victim, who was behind a partially opened door. Sanchez abruptly turned around, fired a gun pointed at the victim's chest and fled. *Id.* at 375-76. Sanchez was convicted of depraved indifference murder. *Id.*

A majority of the New York Court of Appeals characterized Sanchez's actions as "virtually a *knowing*, although not intentional, homicide." *Sanchez,* 98 N.Y.2d at 384 (emphasis in original). The court explained that the jury could have found that the murder was reckless, and not intentional, because the two men were friends, the shooting appeared to have been "sudden, spontaneous and not well-designed to cause imminent death," and the jury may have concluded that this was an "instantaneous, impulsive shooting-perhaps to disable or frighten [the victim], rather than to kill him." *Id.* at 377-78. The court concluded that Sanchez's actions of shooting the victim in the torso at point blank range presented "such a transcendent risk of causing his death that it readily meets the level of manifested depravity needed to establish" depraved indifference murder. *Id.* at 378.

Between 2002 and 2006, New York's interpretation of the language " 'under circumstances evincing a depraved indifference to human life' ... gradually and perceptibly changed from an objectively determined degree-of-risk standard (the *Register* formulation) to a mens rea[.]" *Alexander v. Graham*, No. 07-CV-59, 2008 WL 4239167, at *6-7 (E.D.N.Y.

10

Sept. 11, 2008)(quoting *Policano*, 7 N.Y.3d at 602-03)(internal citations omitted).

In the first of the cases, *People v. Hafeez*, 100 N.Y.2d 253, 258 (2003), the Court of Appeals affirmed the Appellate Division's reversal of Hafeez's depraved indifference murder conviction. The evidence showed that Hafeez lured the victim out of a bar, where his co-defendant was waiting with a knife "concealed ... in his sleeve poised to slip into his hand." *Id.* at 258. The co-defendant inflicted a single stab wound to the victim's chest, killing him in what the Court of Appeals characterized as "a quintessentially intentional attack directed solely at the victim." *Id.* 258. The co-defendant had "plotted his revenge for months in advance and effectuated his plan on the night of the stabbing by a scheme intended to place the victim in a position where he would be vulnerable to attack." *Id.* Since Hafeez's guilt was premised on a theory of accomplice liability, he could be guilty of depraved indifference murder only if he intentionally aided his co-defendant in the commission of the murder and shared his co-defendant's culpable mental state. *Id.* at 258. Because the evidence showed that Hafeez's co-defendant was guilty of intentional murder, and that both Hafeez and his co-defendant "were focused on first isolating, and then intentionally injuring, the victim," Hafeez could not be guilty of depraved indifference murder. *Id.* at 259.

In March 2004, the Court of Appeals decided *People v. Gonzalez*, 1 N.Y.3d 464, 465 (2004). In *Gonzalez*, the defendant kicked in the door of a barber shop, pulled a gun from his waistband, and shot the victim in the chest at close range. As the victim fell to the floor, Gonzalez shot him in the head, and then stood over the victim's body and fired eight more shots into the victim's back and head. *Id.* Under these circumstances, the Court of Appeals found that the only reasonable conclusion from the evidence was that Gonzalez "was guilty of

11

an intentional shooting and no other." *Id.* at 467. The *Gonzalez* court clarified that depraved

indifference murder did not mean "an extremely, even heinously, intentional killing." *Id.* at

468. Rather, depraved indifference murder involved a killing "in which the defendant does not

have a conscious objective to cause death but instead is recklessly indifferent, depravedly so,

as to whether death occurs." *Id.*

The remaining cases in New York's evolving depraved indifference jurisprudence were

decided after Petitioner's conviction became final: *People v. Payne*, 3 N.Y.3d 266 (2004).

*People v. Suarez*, 6 N.Y.3d 202 (2005)(*per curiam*) and *People v. Feingold*, 7 N.Y.3d 288

(2006). In *Payne*, the defendant and the victim lived next door to each other and, although they

had been friends, the relationship was strained. *Payne*, 3 N.Y.3d at 269.  On the day of the

murder, Payne drank a large amount of alcohol at a bar and his girlfriend drove him home. *Id.*

at 269. Payne's girlfriend told him that the victim called her to complain about Payne's dog,

which angered Payne because the victim was belligerent toward his girlfriend and because

Payne warned the victim never to communicate with her. *Id.*  After a telephone conversation,

Payne went next door to the victim's house, confronted the victim, and shot the victim point

blank in the torso, killing him. *Id.*  Payne was convicted of depraved indifference murder, and

the Appellate Division affirmed the conviction.

The New York Court of Appeals reversed, finding that the evidence showed Payne

acted with a "manifest intent to kill." *Payne,* 3 N.Y.3d at 271. The court also ruled that "a

one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved

indifference murder," and differentiated *Payne* from "homicides in which a defendant ...

shoots into a crowd or otherwise endangers innocent bystanders." *Id.* at 271. The *Payne* court

12

further explained that:

> if a defendant fatally shoots the intended victim once, it could be murder, manslaughter in the first or second degree or criminal negligence (or self-defense), but not depraved indifference murder. Moreover, it should be obvious that the more the defendant shoots (or stabs or bludgeons) the victim, the more clearly intentional is the homicide. Firing more rounds or inflicting more wounds does not make the act more depravedly *indifferent*, but more intentional. Absent the type of circumstances in, for example, *Sanchez* (where others were endangered), a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder.

*Id.* at 272-73 (emphasis in original).

In *People v. Suarez*, 6 N.Y.3d at 205, the defendant stabbed his girlfriend three times (in the throat, chest and abdomen) and did not summon aid, resulting in the victim's death. Finding that Suarez's actions did not constitute depraved indifference murder, the Court of Appeals made clear that "depraved indifference is best understood as an utter disregard for the value of human life - a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not." *Id.* at 214. The court recognized that it was "depart[ing] slightly from the *Register* formulation" by "mak[ing] clear that the additional requirement of depraved indifference has meaning independent of the gravity of the risk." *Id.* at 215.

It was not until its decision in *People v. Feingold*, 7 N.Y.3d 288 (2006) that the Court of Appeals expressly overruled *Register* and *Sanchez*. *Feingold* involved a defendant convicted of first degree reckless endangerment after he attempted to commit suicide by sealing his apartment and turning on the gas, which led to an unintended explosion that heavily damaged neighboring apartments. *Id.* at 290. The *Feingold* court recognized that after *Register* and *Sanchez*, the *Hafeez*, *Gonzalez*, *Payne* and *Suarez* decisions had "pointed the law

in a different direction" and concluded that the law changed "to such an extent that *People v. Register* and *People v. Sanchez* should no longer be followed." *Id*. at 292, 294. It expressly held that "depraved indifference to human life" was a "culpable mental state," rather than an element found by examining the objective set of factual circumstances of the incident. *Id.* at 294.

Under current New York law,

> it is now clear that . . . a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder (*Payne*, 3 NY3d at 272); that [a] defendant may be convicted of depraved indifference murder when but a single person is endangered in only a few rare circumstances (*Suarez*, 6 NY3d at 212); and that depraved indifference to human life is a culpable mental state (*Feingold*, 7 NY3d at 296).

*Policano*, 7 N.Y.3d at 601 (internal quotation marks omitted). The Court of Appeals in *Policano* explained that it adhered to a mens rea of recklessness in its decisions in *Hafeez*, *Gonzalez*, *Payne* and *Suarez*, but that these cases represented a "perceptible, evolving departure from the underpinnings of depraved indifference murder as expressed in *Register* and *Sanchez*." *Id.* at 603.  The Court did not decide which case represented the point of no return, noting that "individual judges hold differing views as to where along this trajectory a majority of the Court may have effectively passed the point of no return--the limit beyond which, hard as we may have tried, it was simply not possible to reconcile our developing case law with *Register* and *Sanchez*." *Id.* at 603. But the Court was clear that there was "no doubt . . . that a majority of the Court explicitly overruled *Register* and *Sanchez* in *Feingold*, holding that " 'depraved indifference to human life' is a culpable mental state" (7 NY3d at 296).  After conducting a retroactivity analysis under its own case law, the Court of Appeals clearly held

14

that the *post-Sanchez* case law does not apply retroactively to cases on collateral review.  *Id.* at

603-04 (citing *People v. Pepper*, 53 N.Y.2d 213 [1981], *cert. denied* 454 U.S. 1162 [1982]).

### 1.  Petitioner's section 440 motion and Appellate Division's decision:

Petitioner argued in his third section 440 motion that the *Suarez* and *Feingold*

decisions changed New York jurisprudence on depraved indifference murder and that these

decisions should apply retroactively to his case.  *See* Dkt. No. 16, Ex. Z. The trial court denied

the motion pursuant to CPL § 440.10(2)(a) because the Appellate Division previously found

the evidence sufficient to sustain Petitioner's conviction, and because the changes in the law

since that time governing depraved indifference did not apply retroactively.  Dkt. No. 17, Ex.

BB.

The Appellate Division affirmed. *Baptiste*, 51 A.D.3d 184 (3d Dep't. 2008).  The court

began its analysis by stating that "a motion to vacate a judgment must be denied if the 'issue

raised upon the motion was previously determined on the merits upon an appeal from the

judgment, unless since the time of such appellate determination there has been a retroactively

effective change in the law controlling such issue.' " *Id.* at 186 (quoting CPL § 440.10(2)(a)).

Because it had previously addressed and denied a challenge to the sufficiency of the evidence

in this case, the Appellate Division stressed that the section 440 motion "must be denied

unless there has been a retroactive change in the controlling law since the time of that

determination." *Id.*

The Appellate Division explained that although the Court of Appeals ruled in *Policano*

*v. Herbert*, 7 N.Y.3d 588 (2006) that its new formulation of depraved indifference murder, as

it evolved in the court's decisions in *Hafeez*, *Gonzalez*, *Payne* and *Suarez* incrementally

"pointed the law in a different direction," it did not explicitly state which of these decisions

represented the point at which the evolving case law could not be reconciled with *Register* and

*Sanchez*. *Baptiste*, 51 A.D.3d at 187.  The Appellate Division rejected Petitioner's argument

that the point of no return was either *Hafeez* or *Gonzalez* because those cases did not adopt

"the approach used in subsequent cases holding that, regardless of recklessness, depravity is

not present absent an evil frame of mind, which can be evinced only in the specific factual

circumstances now recognized by the Court." *Id.* at 192. In the Appellate Division's view, that

approach was not adopted until *Payne*, which "marked the first departure away from the

analytical framework set forth in *Sanchez*." *Id.* The Appellate Division explained that in

*Payne*, the Court of Appeals

> did not treat recklessness as the critical element of depraved indifference
> murder; nor did it consider the threshold question in *Sanchez*, *Hafeez* and
> *Gonzalez*-whether a jury could rationally conclude that a defendant had acted
> recklessly, rather than intentionally. While the Court did rely on *Sanchez*,
> *Hafeez* and *Gonzalez*, it was for the proposition that "depraved indifference
> murder may not be properly charged in the overwhelming majority of
> homicides that are prosecuted in New York" (*People v Payne*, 3 NY3d at 270).
> Contrary to the analysis employed in the prior cases, however, the Court treated
> depravity, rather than recklessness, as the critical element.

*Id.* at 192. The Appellate Division also explained that *Payne* was the first case in which the

Court of Appeals "defined depraved indifference murder in terms other than recklessness and

the nature of the risk."  *Id.* at 193.  It further noted that *Payne* represented "the first instance in

which the Court [of Appeals] declined to treat the question of whether the defendant acted

with a reckless state of mind as 'a classic matter for the jury.' " *Id.* at 194 (quoting *Policano,* 7

N.Y.3d at 599).  Based upon this analysis, the Appellate Division found that *Payne* was "the

point of no return" because it was the first case that was irreconcilable with *Sanchez*, and

*Payne* therefore marked the cutoff date for application of the new rule. *Id.* Because Petitioner's conviction became final approximately six months before *Payne*, the Appellate Division found that his section 440 motion was properly denied. *Id.*

### 2. The Appellate Division's decision that *Payne* represented the "point of no return" was not contrary to or an unreasonable application of clearly established Supreme Court precedent

Petitioner claims that the Appellate Division's decision that *Payne* represented the "point of no return" did not "correctly describe the recent developments in New York depraved indifference precedent" and that, therefore, the decision is an "objectively unreasonable interpretation of *Fiore* and *Bunkley.*" Dkt. No. 5 at 18. In support of this argument, Petitioner states that the Appellate Division: (1) oversimplified the holdings in *Hafeez* and *Gonzalez*; (2) failed to acknowledge the degree to which later cases built on the holdings of *Hafeez* and *Gonzalez*; and (3) mischaracterized the "nature of the change in the law of depraved indifference." Dkt. No. 5 at 18.[3]  Petitioner urges this Court to find, instead,

---

[3]    Petitioner also argues that the Appellate Division failed to recognize that New York's depraved indifference murder case law developed along two distinct lines, one dealing with the element of recklessness and the other with the element of depraved indifference. Dkt. No. 5 at 18-19 (citing *Soto v. Conway*, 565 F. Supp. 2d 429, 434 (E.D.N.Y. 2008). In support of that position, Petitioner relies upon *Soto v. Conway*, 565 F. Supp. 2d 429, 434 (E.D.N.Y. 2008), in which the district court, agreeing with Chief Judge Kaye's dissenting opinion in *Policano*, stated that, "[t]o the extent that these cases [*Hafeez, Gonzalez, Payne* and *Suarez*] represented merely the application of existing New York state law to new factual circumstances, they do not represent a change in the law and therefore may be considered upon collateral review." *Id.* at 434 (citing *Bunkley* and *Fiore*). The *Soto* court further stated that "if this Court is correct in distinguishing between the Court of Appeals' parallel jurisprudential threads regarding "charging errors" and "the depraved indifference element" of depraved indifference murder, a merits-based review of the instant petition-which is premised on the former thread-could also look to those decisions that post-date the finality of petitioner's conviction as applications of existing law to new facts." *Id.* at 436. Ultimately, however, the *Soto* court found that the sufficiency claim before it was procedurally barred from habeas review. *Id.* at 436. It is worth noting that the *Policano* majority specifically rejected Judge Kaye's position that "this quartet of cases does not represent a perceptible, evolving departure from the underpinnings of depraved indifference murder as expressed in *Register* and *Sanchez.*" *Policano*, 7

that by the time *Gonzalez* was decided, the "evolutionary process" of New York's depraved indifference law had gone so far that the decisions represented a new rule, and that he is entitled to the benefit of that rule "including any subsequent clarifying precedent[.]" *Id.* at 3.

The Supreme Court has made clear that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Instead, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68 (citations omitted). A state court's interpretation of its own law "binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)(*per curiam*). *See also Portalatin v. Graham*, 624 F.3d 69, 84 (2d Cir. 2010)(en banc)("we do not defer to [the New York Court of Appeals's] interpretation of *federal* law, but we are bound by its construction of *New York* law in conducting our analysis.")(emphasis in original). Therefore, a habeas court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law. *Bradshaw*, 546 U.S. at 78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous."). A determination of state law by a state intermediate appellate court is also binding in a federal habeas action, especially where, as in this case, the Court of Appeals has denied review of the Appellate Division's decision. *See Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 629-30 & n. 3 (1988) ("We are not at liberty to depart from the state appellate court's resolution of these issues of state law. Although petitioner marshals a number of sources in support of the contention that the state appellate court misapplied state law on these

N.Y.3d at 603.

18

two points, the California Supreme Court denied review of this case, and we are not free in this situation to overturn the state court's conclusions of state law."). Therefore, to the extent that Petitioner's arguments center simply on the correctness or incorrectness of the Appellate Division's interpretation of New York law, no relief is due. *See Portalatin*, 624 F.3d at 89-90)("Whether our Court agrees or disagrees with the Court of Appeals' construction of New York law is of no moment. As the Supreme Court has long held, "state courts are the ultimate expositors of state law," *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975), and "[n]either this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State." *Johnson v. Fankell*, 520 U.S. 911, 916 (1997)).

The question under the AEDPA is "not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro,* 550 U.S. at  473. Because the Appellate Division adjudicated Petitioner's claim on the merits, it is entitled to AEDPA deference, and this Court must determine only if the Appellate Division's determination that *Payne* represented the point of no return was contrary to or an objectively unreasonable application of Supreme Court precedent. *Id.*

Petitioner has identified *Fiore* and *Bunkley* as the relevant Supreme Court precedent. *Fiore* and his co-defendant were convicted of violating a Pennsylvania statute that prohibited the operation of a hazardous waste facility without a permit.  *Fiore*, 531 U.S. at 226. Although Fiore had a permit, the Commonwealth argued that his (and his co-defendant's) actions deviated so dramatically from the terms of the permit that he violated the statute.  *Id.* at

227.  Pennsylvania's lower courts agreed.  *Id.* The Pennsylvania Supreme Court declined to review Fiore's conviction, but agreed to review his co-defendant's conviction. The Pennsylvania Supreme Court reversed the co-defendant's conviction because he had a permit. *Id.*  Fiore attempted to have his conviction set aside but was unsuccessful.  *Id.* He filed a petition for a writ of habeas corpus, and the District Court granted the writ, but the Court of Appeals for the Third Circuit reversed.  *Id.*

The Supreme Court granted certiorari "in part to decide when, or whether, the Federal Due Process Clause requires a State to apply a new interpretation of a state criminal statute retroactively to cases on collateral review." *Fiore*, 531 U.S. at 226. The Supreme Court certified a question to the Pennsylvania Supreme Court regarding whether their interpretation of the statute in the co-defendant's case stated the correct interpretation of the law at the date upon which Fiore's conviction became final.  *Id.* at 228. The Pennsylvania Supreme Court answered that the co-defendant's case did not announce a new rule of law, and that the co-defendant's case "furnishe[d] the proper statement of law at the date Fiore's conviction became final." *Id.* (quoting *Fiore v. White*, 562 Pa. 634, 646 (2000)).

In light of Pennsylvania's response, the Supreme Court reversed Fiore's conviction because "the Due Process Clause of the Fourteenth Amendment forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt," and there was no evidence that Fiore failed to possess a permit.  *Id.* at 228-29. The Supreme Court also noted that because the decision in the co-defendant's case did not announce a new rule of law, the case presented "no issue of retroactivity."  *Id.* at 228.

In *Bunkley v. Florida*, 538 U.S. 835, 836-37 (2003), Bunkley was convicted of first

degree burglary because he was armed with a "dangerous weapon" - i.e. a pocket knife with a 2 ½ to 3-inch blade. At the time of his conviction, Florida law excepted a pocket knife from its weapons statute. *Id.* at 837.  In 1997, after Bunkley was convicted, the Florida Supreme Court interpreted the meaning of the "common pocketknife" exception, finding that a pocketknife with a blade of 3 3/4 inches fell within the statutory exception.  *Id. (*citing *L.B. v. State*, 700 So.2d 370 [Fla.1997]).  Bunkley sought post-conviction relief, alleging that under *L.B.*, the knife he possessed was not a weapon and his conviction should be vacated.  *Id.* at 838. Florida's lower courts rejected this argument, and the Florida Supreme Court affirmed, finding that *L.B.* did not apply retroactively. *Id.*

The Supreme Court granted certiorari, and explained that *Fiore* required the Florida Supreme Court to answer "whether, in light of *L.B.*, Bunkley's pocketknife of 2 ½ to 3 inches fit within [the weapons statute's] "common pocketknife" exception at the time his conviction became final." *Bunkley*, 538 U.S. at 840. In other words, Bunkley was entitled to a "determination as to whether L.B. correctly stated the common pocketknife exception at the time he was convicted." *Id.* at 841. The Florida Supreme Court characterized L.B. as part of a "century-long evolutionary process," but the Supreme Court could not determine "what stage in the evolutionary process the law had reached at the time Bunkley was convicted." *Id.* at 841. Since the Florida Supreme Court did not explain when the law changed, the Supreme Court remanded the case for further clarification.  *Id.* at 841-82.

This case is different from *Fiore* and *Bunkley* because there is no open question regarding when New York's law on depraved indifference changed.  The Appellate Division was specifically asked to determine when the developing case law on depraved indifference

21

murder reached the point of no return - a question left open by the Court of Appeals in *Policano*. *Baptiste*, 51 A.D.3d at 187.  Based upon its reading and understanding of New York law, the Appellate Division reasoned that *Payne* best represented the point of no return. *Id.* at 189-95. The Court of Appeals declined leave to appeal from that decision.  *Baptiste*, 10 N.Y.3d 932 (2008). The Appellate Division's conclusion that the law changed when *Payne* was decided, is not contrary to or an unreasonable application of either *Fiore* or *Bunkley.*.

The Appellate Division's further determination that, under *Policano*, the changes in New York law do not apply retroactively also did not violate either *Fiore* or *Bunkley* because the Supreme Court did not hold in either of those cases that the Constitution requires the application of a new interpretation of state law retroactively-in fact, the Court expressly left the question open. *See Fiore,* 531 U.S. at 226 (declining to decide whether "the Federal Due Process Clause requires a State to apply a new interpretation of a state criminal statute retroactively to cases on collateral review" because the Pennsylvania Supreme Court, responding to a certified question, made clear that retroactivity was not at issue); *Bunkley,* 538 U.S. at 840 (noting that retroactivity was not at issue in *Fiore*).

Petitioner argues that the Second Circuit's recent decision in *Henry v. Ricks*, 578 F.3d 134 (2d Cir. 2009) compels this Court to grant habeas relief. *See* Dkt. No. 25 at 2.  In *Henry*, the Second Circuit held that "due process did not mandate the retroactive application of the post-2004 interpretation of the New York Court of Appeals [of the depraved indifference murder statute] on collateral review." *Henry,* 578 F.3d at 141 (declining to apply the New York Court of Appeals's decision in *Suarez*, 6 N.Y.3d 202 [2005] to Henry's habeas petition where his conviction was final in 2000 and his habeas petition was pending when *Suarez* was

22

decided)(citing *Policano v. Herbert*, 507 F.3d 111, 114 [2d Cir. 2007]).  The Second Circuit

further stated that

> In light of the explicit guidance of the New York Court of Appeals [in
> *Policano*, 7 N.Y.3d at 597-600], we recognized that *Gonzalez* and subsequent
> decisions of that court announced a change in New York law-not a clarification
> of it-and "did not reflect the applicable law for purposes" of a conviction
> affirmed by the New York Court of Appeals in 2001.

*Henry*, 578 F.3d at 139.  Petitioner is apparently arguing that the Second Circuit stated that

*Gonzalez* announced the point at which the law on depraved indifference changed, and

therefore the Appellate Division's decision that the law changed when *Payne* was decided is

incorrect and in violation of *Fiore* and *Bunkley*. *See* Dkt. No. 25 at 2.  This argument is

unavailing.

Although the Court of Appeals made clear in *Policano* that its depraved indifference

jurisprudence began to change after *Sanchez*, it did not hold that *Gonzalez* - or any other case

decided between 2002 and 2006 - represented the point at which the law changed. To the

contrary, the Court of Appeals explicitly stated that

> "individual judges hold differing views as to where along this trajectory a
> majority of the Court may have effectively passed the point of no return--the
> limit beyond which, hard as we may have tried, it was simply not possible to
> reconcile our developing case law with *Register* and *Sanchez*. There is no
> doubt, however, that a majority of the Court explicitly overruled *Register* and
> *Sanchez* in *Feingold*, holding that " 'depraved indifference to human life' is a
> culpable mental state" (7 NY3d at 296)."

*Policano*, 7 N.Y.3d at 603.  Thus, neither the Second Circuit's interpretation, nor that of the

Appellate Division, is inconsistent with the Court of Appeals's decision in *Policano*. The

ultimate question under the AEDPA is whether the Appellate Division unreasonably applied

clearly established *Supreme Court* precedent.[4]  The Appellate Division's interpretation of New York law is not contrary to or an unreasonable application of *Fiore* or *Bunkley.*

### 4.   The evidence was sufficient to sustain Petitioner's conviction.

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he is charged. *See Fiore,* 531 U.S. at 228-29; *Jackson v. Virginia*, 443 U.S. 307, 315 (1979). This inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993)(emphasis in original). A habeas petitioner claiming that there was insufficient evidence supporting the conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 324; *see also Schlup v. Delo*, 513 U.S. 298, 323 n. 38 (1995). The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson,* 443 U.S. at 319. "When considering the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'" *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999), *cert.*

---

[4]      *See Mask v. McGinnis*, 252 F.3d 85, 90 (2d Cir. 2001)(*per curiam*)("Assuming *arguendo* that this is an accurate formulation of [the holding in *Innes v. Dalsheim*, 864 F.2d 974 (2d Cir. 1988)], petitioner has established, at most, that the state courts unreasonably applied clearly established Second Circuit precedent. Under AEDPA, however, petitioner is entitled to habeas relief only upon a showing that the state courts unreasonably applied clearly established *Supreme Court* precedent.")(emphasis in original).

*denied* 528 U.S. 1170 (2000)).

Petitioner's conviction was legally insufficient only if no rational trier of fact could have found him guilty of all of the elements of depraved indifference murder under the Court of Appeals's interpretation of the statute as of April 24, 2004, when Petitioner's conviction became final. *See Flowers v. Fisher*, 296 Fed. Appx. 208, 210 (2d Cir. Oct. 21, 2008)("We look to New York Law as it existed at the time [petitioner's] conviction became final, as the New York Court of Appeals has found that although the law on depraved indifference has changed significantly in recent years, those changes do not apply retroactively.")(citing *Policano,* 7 N.Y.3d at 603).  The law as it existed at the time of Petitioner's conviction was based upon *Register*, *Sanchez*, *Hafeez*, and *Gonzalez*, because those cases were decided before his conviction was final. *See Flowers,* 296 Fed. Appx. at 210; *Guzman v. Greene*, 337 Fed. Appx. 27, 29 (2d Cir. Jul.14, 2009) (noting that *Feingold*, which overruled *People v. Register* and *People v. Sanchez*, was decided after Guzman's conviction became final and "therefore need not discuss how, if at all, this case would have been affected if *Feingold* had been decided earlier.") (summary order), *aff'g Guzman v. Greene*, 425 F. Supp. 2d 298 (E.D.N.Y.2006)(denying habeas relief on the basis that sufficient evidence supported defendant's conviction for depraved indifference murder and performing independent retroactivity analysis and finding *Feingold* and *Suarez* should not apply retroactively); *Epps v. Poole*, No. 07-CV-3432, 2010 WL 1991517, at *5 (E.D.N.Y. May 14, 2010)(finding that only Hafeez applied to a petitioner conviction because it was the only case decided at the time the petitioner's conviction became final).

25

Objectively viewing Petitioner's conduct and the surrounding circumstances, this Court cannot conclude that, under the law as it existed when Petitioner's conviction became final, the evidence was indicative only of intentional conduct and not of reckless conduct. As the Appellate Division held on its direct review of this case, a "jury could rationally have determined that [Petitioner] killed Cortijo and Dickerson recklessly, rather than intentionally." *Baptiste*, 306 A.D.2d at 565. The Appellate Division noted that the evidence showed that the only eyewitness to the shooting testified that after Cortijo and Petitioner argued, Petitioner walked away and Cortijo followed him in her car, continuing to have words with him, and Petitioner fired only after Cortijo drove away and returned, and he did not approach the car, "but remained on the sidewalk and fired at the car." *Id.*; *see* Dkt. No. 19-5, Trial Tr. at 3524-33; Dkt. No. 19-6, Trial Tr. at 3666-84.[5] The Appellate Division concluded that "the jury could have believed that if [Petitioner] had initially intended to kill Cortijo, his walking away from the earlier encounter evidenced an abandonment of that intent." *Baptiste*, 306 A.D.2d at 565. It also found that when Cortijo "resumed the confrontation, it was not unreasonable for the jury to conclude that [Petitioner] acted suddenly and spontaneously, without intent to kill, but rather fired into the car intending to scare or injure Cortijo." *Id.*

The *Hafeez* and *Gonzalez* decisions do not change that result. *Hafeez* (where the defendant lured the victim outside before his co-defendant intentionally stabbed the victim to death) and *Gonzalez* (a one-on-one killing where the defendant shot the victim multiple times

---

[5]     The page numbers cited in this Decision and Order refer to the original transcript numbers at the top right-hand corner of each page.

26

at close range and, while the victim was on the ground, shot him nine more times) were overturned because the Court of Appeals expressly concluded that there was "*no record evidence* to support a finding of recklessness" to support either conviction for depraved indifference murder. *Baptiste*, 51 A.D.3d at 190 (citing *Hafeez*, 100 N.Y.2d at 256 and *Gonzalez*, 1 N.Y.3d at 467)(emphasis in original); *see Grant v. Woods*, 313 Fed. Appx. 376, 377 (2d Cir. 2009)("The *Hafeez* court did no more than find, under the particular facts of that case, that there was no evidence that the defendant acted with anything other than intent to kill, and therefore that the defendant's conviction for depraved indifference murder was improper."), *cert. denied* 130 S. Ct. 291 (2009).  In contrast, the evidence in this case, including that this was not a one-on-one shooting and that Petitioner fired the gun into a car occupied by two other people, in quick succession, placing its occupants at risk, was not exclusively consistent with an intentional killing, and the jury could reasonably have concluded that Petitioner lacked the manifest intent to kill.  *See, e.g., Archer v. Fischer*, No. 05-CV-4990, 2009 WL 1011591, at *14 (E.D.N.Y. Apr. 13, 2009)(finding evidence sufficient to support conviction for depraved indifference murder where the defendant fired several shots into a car in quick succession before the car could speed away, and the "shooting was not a one-on-one confrontation, but, instead, one of the shots killed Niles while another shot nearly hit Bethune, the driver" and there were no previous disputes between the defendant and Niles, but, rather, with Bethune, supporting an inference that the defendant was indifferent about who was in the car and that he randomly fired "without a specific intent to kill.").

Petitioner argues that the evidence that he fired at least fifteen shots into the car at point-blank range proves that he acted in a manner that created a "virtual certainty of death

born of an intent to kill." Dkt. No. 23 at 14 (quoting *Gonzalez*, 1 N.Y.3d at 468).  Petitioner also argues that the fact that he initially walked away from Cortijo's car did not turn an intentional crime into a reckless one.  *Id.* at 15 (citing *Gonzalez*, 1 N.Y.3d at 465-66). When Petitioner's conviction became final, however, "strong proof of intent did not foreclose the jury from finding recklessness and depraved indifference" because the defendant's state of mind was still a "classic matter for the jury."  *Policano*, 7 N.Y.3d at 599-600. As the Appellate Division found, "*Hafeez* and *Gonzalez* did not contradict the principle that evidence that 'a defendant's actions created an almost certain risk of death' could establish *depraved indifference to human life*." *Baptiste*, 51 A.D.3d at 191 (quoting *Policano*, 7 N.Y.3d at 600)(emphasis in original).  It was not until *Payne* that the Court of Appeals expressly stated that "it should be obvious that the more the defendant shoots (or stabs or bludgeons) the victim, the more clearly intentional is the homicide." *Payne*, 3 N.Y.3d at 272. *See Rivera v. Cuomo*, No. 05-CV-1699, 2009 WL 4929264, at *19 (E.D.N.Y. Dec. 21, 2009)("the law changed to such a degree that by October 2004, the Court of Appeals was stating that a 'one-on-one shooting or knifing [or similar killing] [could] almost never qualify as depraved indifference murder.'")(quoting *Payne*, 3 N.Y.3d at 272)). Thus, the fact that Petitioner fired multiple shots in this case, and endangered others, "support[ed] rather than detract[ed] from characterizing [his conduct] as evincing depraved indifference to human life." *Epps*, 2010 WL 1991517, at *6 (quoting *Sanchez*, 98 N.Y.2d at 384).

In sum, the Appellate Division's decision in this case was not contrary to or an unreasonable application of clearly established Supreme Court precedent, and this ground for

relief is denied and dismissed.[6]

### C.      Post-arrest statements as fruit of Poisonous Tree:

Petitioner argues in Ground Two of his petition that he was arrested without probable cause because the police officers who stopped him on Interstate 87 did not have a sufficient basis to believe he was involved with the murders, and, accordingly, statements he made as a result of the arrest should have been suppressed as fruit of the poisonous tree. *See* Dkt. No. 1 at 8. Respondent argues that because Petitioner's claim is grounded in the Fourth Amendment, habeas review of this claim is barred by *Stone v. Powell*, 428 U.S. 465 (1976). Dkt. No. 13 at 47-50.

This Court agrees with Respondent.  In *Stone,* the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone,* 428 U.S. at 494-95. The Supreme Court has since extended *Stone* to preclude habeas review of a "Fourth Amendment challenge to the introduction of a confession made after an allegedly unlawful arrest." *Glover v. Herbert,* 431 F. Supp. 2d 335, 338 (W.D.N.Y. 2006) (citing *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983)(*per curiam*)(reversing grant of habeas corpus where circuit court of appeals had found that there was an unattenuated causal link between the custodial statements made by respondent and a violation of the Fourth Amendment)).

---

[6]      Because *Payne, Suarez* and *Feingold* were decided after Petitioner's conviction became final, this Court will not consider what effect, if any, these decisions would have had on this case had they been decided while Petitioner's direct appeal was still pending.

Thus, *Stone* bars habeas review of claims that statements made during or after an allegedly

unlawful arrest should have been suppressed as fruit of an illegal arrest.  *Cardwell,* 461 U.S. at

572-73, *Glover,* 431 F. Supp. 2d at 338.  Following *Stone*, review of Fourth Amendment

claims in habeas petitions is permissible only: "(a) if the state has provided no corrective

procedures at all to redress the alleged fourth amendment violations; or (b) if the state has

provided a corrective mechanism, but the defendant was precluded from using that mechanism

because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975

F.2d 67, 70 (2d Cir. 1992); *see Ramdeo v. Phillips*, No. 04-CV-1157, 2007 WL 1989469, at

*27 (E.D.N.Y. Jul. 9, 2007).

New York has a corrective procedure for Fourth Amendment violations, which is

facially adequate. *See* CPL §710; *Capellan,* 975 F.2d at 70 n. 1. Under CPL § 710, a defendant

may move to suppress evidence he claims was unlawfully obtained when he has "reasonable

cause to believe that such [evidence] may be offered against him in a criminal action." *Huntley*

*v. Superintendent, Southport Corr. Fac.*, No. 00-CV-191, 2007 WL 319846, at *7 (N.D.N.Y.

Jan. 30, 2007)(Hurd, D.J., adopting Rep. - Rec. of Lowe, M.J.)(quoting CPL § 710.20).

Petitioner availed himself of that procedure by making a motion to suppress his statements on

the ground that they were the fruit of an alleged illegal arrest.  *See Baptiste*, 306 A.D.2d at 566.

The trial court denied these motions after a lengthy hearing, and Petitioner appealed that

denial.[7]  Further, having reviewed the record, there was no unconscionable breakdown in the

_____

[7]       The Appellate Division found that, based upon the information police had at the
time of the stop, police lacked probable cause to take Petitioner into custody and that his arrest was
therefore illegal. *Baptiste*, 306 A.D.2d at 566.  The court further ruled, however, that any error in
admitting Petitioner's statements into evidence at trial was harmless because the "independent proof
at trial concerning the information contained in defendant's statements was overwhelming" and

underlying process. Petitioner's claim is barred by *Stone* and *Cardwell* and it is dismissed.

### D.  Preclusion of a defense rebuttal witness:

Petitioner argues in Ground Three of his petition that the trial court improperly

precluded him from calling a rebuttal witness at trial. Specifically, Petitioner argues that he

should have been permitted to call Christopher Lee Litts because Litts would have: (1)

discredited one of the People's witnesses, Heriberto Ortiz, who testified that Petitioner told

Litts that Petitioner fired the fatal shots and that he wanted to kill a baby;[8] and (2) exposed

Ortiz's close relationship with Petitioner's co-defendant, Dennis, and thus highlighted Ortiz's

motive to testify in a way that incriminated Petitioner but exonerated Dennis.  Dkt. No. 1 at 9;

Dkt. No. 5 at 24-26; Dkt. No. 23 at 16-17.

Heriberto Ortiz testified at trial that he was confined in the Schenectady County jail

during the same time period that Petitioner and Petitioner's co-defendant, Dennis, were

confined there. *See* Dkt. No. 19-4, Trial Tr. at 2572-75.   Ortiz testified that he overheard

Petitioner tell another inmate, Christopher Litts, that he was in jail for "some bullshit" and that

Dennis was in jail "for something he didn't do."  *Id.* at 2576. Ortiz testified that Petitioner also

told Litts that Dennis would be let out of jail.  *Id.* at 2577. Ortiz denied any friendship with

Dennis.  *Id.* at 2635-36.

Ortiz further testified that Petitioner told him that Cortijo's murder stemmed from

---

because Petitioner's "statements did not admit the shooting and the contents were established by
other witnesses, the statements had a negligible effect upon the jury." *Id.* at 568.

   [8]   Corjito's four-year-old son was in the back seat of the car during the shooting.  *See*
Dkt. No. 19-1, Trial Tr. at 1566-69. He was not injured. *Id.* at 1573; Dkt. No. 19-2, Trial Tr. at 1992-
94, 2032-33.

Cortijo hitting Petitioner with her car, damaging Petitioner's $800.00 bicycle.  Dkt. No. 19-4, Trial Tr. at 2578.  Petitioner also told Ortiz that he went to his house to get his gun and then went in search of the victims. *Id.* at 2578-79.  Petitioner stated that he argued with the girls, and "[o]ne thing led to another. That's when he just shot them.  Then he told me the messy thing about it, that he think [sic] the baby seen him, and he said that if he had known the baby was there he would have had to kill the baby." *Id.* at 2578-79, 2627.

Finally, Ortiz testified that he overheard a conversation between Petitioner and Dennis, during which Dennis asked Petitioner why he signed statements against Dennis.  Dkt. No. 19-4, Trial Tr. at 2579.  Petitioner responded that he did not sign the statements, and that the lawyers were trying to turn them against each other. *Id.* Dennis asked why Petitioner was being nice by having Petitioner's girlfriend send money and packages to Dennis. *Id.* at 2580.  Petitioner told Dennis not to let the lawyers "turn them against each other." *Id.*

Petitioner's counsel wanted to call Litts to testify regarding the conversation he had with Petitioner.  Dkt. No. 19-8, Trial Tr. at 4892-98.  The trial court held a hearing, outside the presence of the jury, during which it questioned Litts. Dkt. No. 19-9, Trial Tr. at 4909-20. Litts stated that when he asked Petitioner what he was in jail for, Petitioner's exact words were, "I'm in here for bullshit"( *Id.* at 4909), but that Petitioner did not say anything about Dennis during that conversation. *Id.* at 4920.  Litts also testified that he was always in a position to hear conversations between Ortiz and Petitioner, who spoke only while playing basketball and then spoke only about the game they were playing, and Ortiz never heard Petitioner talk about his case. *Id.* at 4913-17.  Litts also told the court that Ortiz and Dennis were "like best friends." *Id.* at 4918. The trial court denied Petitioner's request to call Litts as a witness because if his

32

testimony was offered to impeach Ortiz, it was collateral, and if it was offered for the statements made by Petitioner, it was hearsay.  Dkt. No. 19-9, Trial Tr. at 4921, 4926-30.

The Appellate Division found that "Litts' testimony as to a conversation between Litts and [Petitioner] should have been admitted to rebut the testimony of [Ortiz]." *Baptiste*, 306 A.D.2d at 569.  However, it found that the error was harmless "given the fact that the more damaging portion of the inmate's testimony concerned a direct conversation between himself and defendant--to which Litts was not a party--and that there was significant other proof of defendant's involvement in the shooting, including his admission to his then girlfriend [.]" *Id.* The Appellate Division's finding that the exclusion of Litts's testimony was harmless, which is entitled to AEDPA deference, was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

In *Perkins v. Herbert*, 596 F.3d 161, 175 (2d Cir. 2010), *cert. denied* 131 S. Ct. 318 (2010), the Second Circuit stated that "[w]here a state appellate court has found that a state trial court committed a constitutional violation but has held that the violation was harmless, the standard of review for a federal court conducting habeas corpus review has not yet been clearly established." The Second Circuit explained that federal habeas courts have adopted two approaches to harmless error review.  The first approach required a habeas court to determine whether, in its own judgment, the constitutional error resulted in "actual prejudice" to the petitioner. *Id.* at 175 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-39, (1993) (internal quotation marks omitted). Under this approach, habeas relief is not warranted unless, "'in light of the record as a whole, [the constitutional violation] had *substantial* and *injurious* effect or influence' in securing the defendant's conviction." *Id.* (citing *Brecht*, 507 U.S. at 638)

(emphasis in original).  Under the second approach, the habeas court is required to determine whether the state appellate court "acted reasonably in determining that the constitutional error was harmless beyond a reasonable doubt" under *Chapman v. California,* 386 U.S. 18, 24 (1967), the test "traditionally used on direct review."  *Id.* (citing *Mitchell v. Esperanza*, 540 U.S. 12, 17-19 (2003)(*per curiam*). The Second Circuit declined to decide whether both tests applied or whether *Brecht* applied by itself because under the circumstances in *Perkins,* the result would be the same under either test.  *Id.* at 176-77.

The same is true in this case. As the Appellate Division found, the most damaging portion of Ortiz's testimony was that Petitioner admitted he was the shooter, and Litts could not contradict that testimony because he was not present for that conversation. Trial Tr. at 2579, 2627. Moreover, "[t]he strength of the prosecution's case is probably the single most critical factor" in a harmless error analysis. *Perkins,* 596 F.3d at 177 (quoting *United States v. Reifler*, 446 F.3d 65, 87 (2d Cir. 2006) (quoting *Latine v. Mann*, 25 F.3d 1162, 1167-68 (2d Cir.1994)). As the Appellate Division further found, the proof against Petitioner was strong, including his admission that he shot the victim to his then-girlfriend, Eleanor Amuaku. *See* Dkt. No.19-6, Trial Tr. at 4027; Dkt. No. 19-7, Trial Tr. at 4031-35; 4041-47.

Based on the foregoing, the Appellate Division's finding that the error was harmless was "certainly not 'objectively unreasonable.' " *Perkins,* 596 F3d at 178 (citations omitted). Nor did Petitioner suffer "actual prejudice" by the exclusion of Litts's testimony. *Id.* at 177-78.  *See Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (a constitutional error in a state-court criminal trial is harmless as long as it did not have a "substantial and injurious effect" on the jury's verdict, and stating that this standard of review applies in section 2254 proceedings regardless of "whether

34

or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard" enunciated in *Chapman*)(citing *Brecht,* 507 U.S. at 631).  This claim is denied and dismissed.

### D.  Ineffective Assistance of Trial Counsel

Petitioner claims in Ground Four of his petition that trial counsel was ineffective for failing to: (1) raise a temporary insanity defense; (2) call exculpatory witnesses; (3) request a missing witness charge; and (4) argue that the depraved indifference murder statute was unconstitutional as applied to Petitioner.  Dkt. No. 1 at 11; Dkt. No. 5 at 26-31.

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must demonstrate that: (1) counsel's performance fell below an objective standard of professional reasonableness; and (2) but for counsel's alleged errors, the results of the proceedings would have been different; *i.e.* petitioner suffered prejudice. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  In applying this test, a reviewing court must be "highly deferential" and presume that counsel's conduct falls within the range of reasonable performance. *Strickland*, 466 U.S. at 689. The failure to make meritless arguments or objections cannot constitute ineffective assistance. *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999), *cert. denied,* 531 U.S. 811 (2000).  To determine whether counsel's performance was effective, the court examines "counsel's overall performance" as reflected in the record. *See Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986); *see also Jeremiah v. Artuz*, 181 F. Supp. 2d 194, 203-04 (E.D.N.Y. 2002) (finding counsel's assistance effective where he cast

doubt on the prosecution's case through competent cross-examination and closing argument).[9]

Petitioner first argues that trial counsel was ineffective for failing to present a temporary insanity defense at trial.  Dkt. No. 1 at 11.  Petitioner raised this claim in his first section 440 motion.  *See* Dkt. No. 16, Ex. A at ¶ 6.  Specifically, Petitioner argued that counsel never discussed the possibility of raising a defense that he was suffering from a mental disease or defect pursuant to New York Penal Law § 40.15 even though he was aware that Petitioner had seen a psychologist for several years. *Id.* at ¶ 8-9.  Petitioner further asserted that his mother told counsel that Petitioner had a history of episodes of rage and antisocial behavior and should have, at the very least, called Petitioner's psychologist to testify.  *Id.*

The trial court rejected this claim, and the Appellate Division affirmed, finding that Petitioner presented "insufficient evidence of the existence of a mental disease or defect that would sustain such a defense." *Baptiste*, 306 A.D.2d at 569.  The court also noted that

> at trial, defendant based his defense on proof that his codefendant shot the victims. This defense was consistent with defendant's oral and written statements, as well as the testimony of the only eyewitness to the shooting. Defenses of extreme emotional disturbance and mental disease or defect would have been inconsistent with defendant's trial strategy since it would have required defendant to admit he shot the victims. Defendant's claim that trial counsel failed to discuss or consider these defenses is belied by the affidavit of defendant's mother in which she states that defense counsel was well aware of defendant's prior counseling and mental health problems.

*Id.* at 569-70. As the Appellate Division noted, Petitioner's claim relates to trial counsel's

---

[9]     New York's meaningful representation standard is "not contrary to the mandates" of *Strickland v. Washington*, 466 U.S. 668 (1984). *Rosario v. Ercole*, 601 F.3d 118, 124-26 (2d Cir. 2010).

tactical or strategic choices, which are "virtually unchallengeable." *Strickland*, 466 U.S. at 690;

Counsel is not ineffective simply because his "chosen strategy did not succeed." *Pratt v.*

*Upstate Corr. Fac.*, 413 F. Supp. 2d 228, 244 (W.D.N.Y. 2006). Accordingly, this claim is

denied. *See Lavayen v. Duncan*, No. 02-CV-0305, 2007 WL 1695585, at *1 (E.D.N.Y. Jun. 7,

2007)(stating that where a reasonable trial strategy is apparent on the record and "where the

alternative trial strategy proffered by the habeas petitioner, while itself reasonable, is fraught

with potential dangers, the presumption remains that counsel engaged in strategic decision

making that should not be second-guessed by the habeas court."), *aff'd* 311 Fed. Appx. 468 (2d

Cir. Feb. 24, 2009), *cert. denied* 130 S. Ct. 112 (2009).

Petitioner next argues that counsel was ineffective for failing to call exculpatory

witnesses.  Dkt. No. 1 at 11. Trial counsel's decision regarding whether to call witnesses on

behalf of a defendant, and, if so, which witnesses to call, is a tactical decision that generally

should not be disturbed on habeas review. *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005),

*cert. denied* 546 U.S. 1184 (2006); *Schultz v. Marshall*, 528 F. Supp. 2d 77, 92 (E.D.N.Y.

2007), *aff'd* 345 Fed. Appx. 627 (2d Cir. Sept. 4, 2009).  Counsel's decision not to call specific

witnesses, "even ones that might offer exculpatory evidence," ordinarily does not constitute

ineffective assistance of counsel. *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000), *cert.*

*denied* 532 U.S. 1007 (2001)(citations omitted).

Here, Petitioner has not identified any witness counsel failed to call, nor has he set forth

any facts or arguments in support of this assertion. Petitioner's vague and conclusory statement

that counsel failed to call exculpatory witnesses is therefore denied. *See Blackledge v. Allison*,

431 U.S. 63, 75 (1977)("The allegations in this case were not in themselves so vague (or)

conclusory as to warrant dismissal for that reason alone.")(internal citations omitted); *Grant v. Connell*, No. 06-CV-4364, 2008 WL 834184, at *4 (S.D.N.Y. Mar. 27, 2008)(dismissing habeas claim that a conviction was procured by fraud or duress because it was "vague, conclusory and wholly without merit."); *Skeete v. People of New York State*, No. 03-CV-2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003) ("Skeete's second claim is no more than a vague allegation that 'numerous' violations and errors occurred at his trial. Skeete fails to offer even the most cursory description of these alleged errors. He offers no facts, nor any reference to the record. Such vague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief.").

Petitioner next argues that counsel was ineffective for failing to request a missing witness charge. Dkt. No. 1 at 11.  Although Petitioner does not identify the missing witness in his petition, nor does he discuss this claim in any detail in his memorandum of law or in his reply brief, he argued on direct appeal that trial counsel was ineffective for failing to request a missing witness charge with respect to a witness identified as Maria Gonzalez.  *See* Dkt. No. 16, Ex. F at 81.

To be entitled to a missing witness charge under New York law, Petitioner had to show that Gonzalez was knowledgeable about issues material to the trial, that she was expected to give non-cumulative testimony favorable to the prosecution, and that she was available to the prosecution.  *Farr v. Greiner*, No. 01 CR 6921, 2007 WL 1094160, at *13 (E.D.N.Y. Apr. 10, 2007) (*People v. Macana*, 84 N.Y.2d 173, 196 [1994] and *People v. Gonzalez*, 68 N.Y.2d 424, 427 [1986]).  As the Appellate Division found, Petitioner's section 440 motion papers failed to demonstrate his entitlement to a missing witness charge with respect to the People's failure to

call this witness. *Baptiste*, 306 A.D.2d at 570; s*ee Moore v. West*, No. 03-CV-0053, 2007 WL

1302426, at \*18 (N.D.N.Y. May 1, 2007) (petitioner's claim that he was improperly denied a

missing witness charge did not provide grounds for habeas relief where petitioner failed to

show, among other things, that the witness would have testified favorably for the prosecution).

Moreover, since Petitioner has failed to provide any facts or arguments in support of this claim,

it is vague and conclusory and does not warrant habeas relief.  *See Blackledge,* 431 U.S. at 75;

*Grant,* 2008 WL 834184, at \*4; *Skeete,* 2003 WL 22709079, at \*2.

Petitioner further claims that counsel was ineffective for failing to argue that the

depraved indifference murder statute was unconstitutionally vague as applied to Petitioner.  *See*

Dkt. No. 5 at 28-30. Petitioner raised this argument in his second section 440 motion.  *See* Dkt.

No. 16, Ex. M, at 5-16; Ex. O at 12-14. The trial court denied the claim based upon CPL §

440.10(3)(c) because Petitioner previously filed a section 440 motion, alleging that trial counsel

was ineffective on different grounds, and was in a position to raise this claim but did not.  Dkt.

No. 16, Ex. P.  Section 440.10(3)(c) is an adequate state ground to serve as a procedural bar to

federal habeas review of the merits of an ineffective assistance of counsel claim. *See Murden v.*

*Artuz*, 497 F.3d 178, 192-94 (2d Cir. 2007), *cert. denied* 128 S. Ct. 1083 (2008).[10]

---

[10]      Petitioner concedes that the state court applied CPL § 440.10(3)(c) to this claim, but
argues that this is a permissive procedural bar and since the state court also issued an alternative
holding on the merits, the procedural bar should not preclude review of this claim.  *See* Dkt. No. 23
at 12-15. This argument fails because "federal habeas review is foreclosed when a state court has
expressly relied on a procedural default as an independent and adequate state ground, even where
the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v.*
*Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990)(citing *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989) ("[A]
state court need not fear reaching the merits of a federal claim in an alternative holding. By its very
definition, the adequate and independent state ground doctrine requires the federal court to honor a
state holding that is a sufficient basis for the state court's judgment, even when the state court also
relies on federal law."). Thus, because "the state court explicitly invoke[d] a state procedural bar
rule as a separate basis for decision," this claim is foreclosed. *Harris*, 489 U.S. at 264 n. 10.

Petitioner's claim is therefore barred by an adequate an independent state court ground unless he demonstrates (1) good cause for the default and actual resulting prejudice; or (2) that the denial of habeas relief would leave unremedied a "fundamental miscarriage of justice," *i.e.*, that he is actually innocent. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998).

In an attempt to show cause, Petitioner alleges that appellate counsel was ineffective for failing to raise this claim on direct appeal. *See* Dkt. No. 5 at 30-32. The ineffectiveness of counsel for not raising or preserving a claim in state court will be sufficient to show cause for a procedural default only when counsel was so ineffective that the representation violated the petitioner's Sixth Amendment right to counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001). As discussed elsewhere in this Decision and Order, Petitioner's claim that appellate counsel was ineffective is without merit. It therefore may not serve as "cause" for a procedural default. *Aparicio*, 269 F.3d at 91-92. Since Petitioner has failed to show cause for the procedural default, the Court need not decide whether he suffered actual prejudice. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (adhering to the cause and prejudice test "in the conjunctive") (quotation omitted); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985)(same); *Raymond v. David,* No. 04-CV-796, 2008 WL 2561997, * 4 (N.D.N.Y. Jun. 24, 2008)(Hurd, J.)(same).

Finally, on the record before this Court, there is no basis to conclude that the failure to consider the merits of Petitioner's claim would result in a fundamental miscarriage of justice. *House v. Bell,* 547 U.S. 518, 536-39 (2006); *Schlup v. Delo,* 513 U.S. 298, 327 (1995). Petitioner has not produced any new evidence that he is actually innocent. To the contrary,

_____

Petitioner's argument is that if he acted at all, his actions were intentional and not reckless.

Accordingly, the procedural default bars federal review of Petitioner's claim.[11]

Petitioner further asserts that it was unreasonable for the state courts not to hold a

hearing regarding Petitioner's claims that trial counsel was "mentally unstable during trial."

*See* Dkt. No. 5 at 31. State prisoners have no federal constitutional right to post-conviction

proceedings in state court. *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987).  Thus, to the

extent that Petitioner is challenging alleged procedural errors by the trial court in deciding his

section 440 motion, including his claim that the court denied the motion without holding a

hearing, those claims are not cognizable on habeas review. *Ferrer v. Superintendent*, 628 F.

Supp. 2d 294, 309 (N.D.N.Y. 2008)(Mordue, C.J.)(" '[f]ederal habeas relief is not available to

redress alleged procedural errors in state post-conviction proceedings.' ")(quoting *Falas v.*

*Phillips*, No. 03 Civ. 4839, 2004 WL 1730289, at *13 (S.D.N.Y. Aug. 3, 2004), *adopted* 2005

WL 756886 [S.D.N.Y. Apr. 1, 2005]); *Jones v. Duncan*, 162 F. Supp. 2d 204, 217 (S.D.N.Y.

Apr. 3, 2001)(stating that "habeas relief is not available to redress alleged procedural errors in

state post-conviction proceedings,"and denying habeas relief on claim that the trial court failed

to hold an evidentiary hearing on post-conviction motions)(citations omitted).  Further, the

Appellate Division granted Petitioner leave to appeal the trial court's denial of his section 440

motion, and that appeal was consolidated with Petitioner's direct appeal. Petitioner raised and

---

[11]     The Second Circuit recently rejected a claim that the depraved indifference murder statute was unconstitutionally vague as applied to two separate petitioners whose convictions became final in 2003 and 2005 because the statute "provided them with notice that their conduct was prohibited" and the statute "did not authorize or encourage arbitrary enforcement." *Mannix v. Phillips*, 619 F.3d 187, 189 (2d Cir. 2010), *cert. denied* No. 10-6749, 2010 WL 3829449 (U.S. Nov. 15, 2010).

fully litigated each of these claims regarding the denial of his section 440 motion on appeal. Therefore, Petitioner "was not prejudiced by any alleged violation [of state procedural rules]." *Parker v. New York*, No. 05 Civ. 3347, 2006 WL 864272, at *5 (S.D.N.Y. Apr. 5, 2006).[12]

In sum, the Appellate Division's rejection of Petitioner's claim that trial counsel was ineffective was not contrary to or an unreasonable application of clearly established Supreme Court precedent, and this claim is denied and dismissed.

### E. Appellate Counsel Ineffectiveness

Petitioner argues in Ground Five of his petition that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for not arguing that the depraved indifference murder statute was unconstitutional as applied to Petitioner. Dkt. No. 1; Dkt. No. 5 at 31-32; Dkt. No. 23 at 16-17. Petitioner raised these claims in a writ of error coram nobis challenging appellate counsel's effectiveness, and the Appellate Division rejected them without opinion. *See* Dkt. No. 16, Ex. S, U-V. The Appellate Division's rejection of this claim was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

Although the *Strickland* test was originally formulated in the context of evaluating

---

[12]         Under New York law, a trial court may deny a section 440.10 motion without a hearing if the moving papers do not allege any ground constituting legal basis for the motion. *See* CPL § 440.30(4)(a). Here, the trial court denied this claim without a hearing because Petitioner "submit[ted] only bald allegations in support of this theory and does not make any allegations of conduct that occurred during his representation indicative [of] any mental impairment of trial counsel or how he was adversely impacted." Dkt. No. 16, Ex. C at 2. The Appellate Division affirmed, finding that the court properly denied the motion without a hearing because Petitioner's motion papers "fail[ed] to demonstrate how counsel's post-trial circumstances affected his trial performance [.]" *Baptiste*, 306 A.D.2d at 570. The state court's decisions were based on, and in compliance with section 440.30(4)(a). The trial court's failure to hold a hearing before denying Petitioner's section 440 motion is thus insufficient to constitute a denial of Petitioner's constitutional rights.

claims of trial counsel's ineffectiveness, the same test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). As previously noted, to demonstrate constitutionally ineffective assistance of counsel, petitioner must show: (1) counsel's performance fell below an objective standard of professional reasonableness; and (2) but for counsel's alleged errors, the results of the proceedings would have been different, and as such, petitioner suffered prejudice. *Smith*, 528 U.S. at 285-86; *Strickland*, 466 U.S. at 694. A petitioner must show more than counsel's failure to raise a non-frivolous argument, as counsel is required to use professional judgment when deciding to concentrate on a few key issues while eliminating weaker arguments, and is not required to advance every argument, regardless of merit, urged by the petitioner. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). A petitioner may show prejudice if there is a reasonable probability that the omitted claim would have been successful before the state's highest court. *Smith*, 528 U.S. at 285; *Mayo v. Henderson*, 13 F.3d 528, 533-34 (2d Cir. 1994), *cert. denied* 513 U.S. 820 (1994). A reviewing court must determine not whether the state court's rejection of the ineffective assistance of counsel claim was correct, but whether, under *Strickland*, it was "objectively unreasonable." *Mosby v. Senkowski*, 470 F.3d 515, 519 (2d Cir. 2006), *cert. denied* 128 S. Ct. 75 (2007).

Petitioner's trial counsel's failure to make a specific motion to dismiss the depraved indifference murder charge based upon a theory that the statute was unconstitutional as applied to him does not constitute ineffective assistance of counsel because New York and federal courts have "repeatedly upheld the constitutionality of the statute." *Guzman v. Greene*, 425 F. Supp. 2d 298, 320 (E.D.N.Y. 2006)(citing *People v. Johnson*, 87 N.Y.2d 357 [1996] and

*People v. Cole*, 85 N.Y.2d 990 [1995]), *aff'd* 357 Fed. Appx. 27 (2d Cir. Jul. 14, 2009). *See Mannix*, 619 F.3d at 189, 197-201. The failure to make an argument that has little chance of success does not constitute ineffective assistance of counsel. *Torres v. McGrath*, 407 F. Supp. 2d 551, 562 (S.D.N.Y. 2006)(holding that the "'failure to make a meritless argument does not amount to ineffective assistance.' ")(quoting *Arena*, 180 F.3d at 396). Since Petitioner's "predicate claim for ineffective trial counsel is meritless, his claim for ineffective appellate counsel must be dismissed." *Brown v. Perlman*, No. 07 Civ. 8672, 2008 WL 2009220, at *29 (S.D.N.Y. May 8, 2008)(citing *Aparicio*, 269 F.3d at 99-100).

**WHEREFORE**, after reviewing Petitioner's submissions and the relevant law, and for the reasons stated herein, it is hereby

**ORDERED**, that the petition for a writ of habeas corpus (Dkt. No. 1) is **DENIED and DISMISSED in its entirety;** and it is further

**ORDERED**, that no certificate of appealability shall issue in this case because petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2); and it is

**ORDERED,** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:   January 20, 2011

Thomas J. McAvoy
Senior, U.S. District Judge

44